JOHN S. MOORE, Plaintiff in Error, v. WILLIAM MORRIS, Defendant in Error.

ERROR TO PEORIA.

The words, "good current money," in a contract, will be understood to mean the coin of the constitution, or foreign coins made current by act of Congress, unless it appears those terms have a different local signification.

If the person who is to pay under such a contract is led to suppose, by the declarations of the other party, that other money than coin will be received, he should, upon a refusal to take paper money, be allowed a reasonable time within which to procure coin.

THIS was an action of assumpsit, commenced February 12, 1856, in Rock Island Circuit Court, and change of venue to Peoria county, and trial, March term, 1858, before POWELL, Judge, and a jury.

The declaration contained the common counts, and for goods and chattels, oxen, steers, cows and heifers, sold and delivered to defendant.

The pleas set forth an agreement in writing, dated June 27th, 1854, between the parties, by which Moore agreed to sell to Morris from eighty to one hundred cattle, to be kept by Moore until 1st of May, 1855, and then to deliver the same to Morris at Samuel Carnahan's scales in township 14 N. 4 W. in Mercer county, Illinois, Morris to pay for the same, three dollars and fifty cents per 100 pounds, in good current money of this State. The agreement acknowledged receipt of $500 on the contract.

The pleas also set up another agreement of the parties, of date, May 3, 1855, which agreement, after reciting the first agreement of June 27, 1854, and that a difficulty had arisen in reference to the true construction thereof, and also in reference to the performance of the terms and conditions thereof, and that Moore had that day delivered 96 cattle under said agreement, averaging about 1,329 pounds gross weight, and Morris had paid for the same the price agreed on under the first contract; they agreed that the delivery was made upon the above, and in part consideration of the terms and conditions of this contract, the delivery and payment not to affect the questions that may arise between the parties in reference to the performance or non-performance of the conditions and terms of the first contract, and further agreed to submit the whole matter to the decision of Ira O. Wilkinson, which decision to be made within three months from the date of the agreement, each party binding himself to abide by such decision; that the time for such de-

cision was by agreement postponed till 20th November, 1855, which last agreement was indorsed on the said agreement of submission.

MANNING & MERRIMAN, for Plaintiff in Error.

N. H. PURPLE, for Defendant in Error.

BREESE, J. This was an action of assumpsit, brought by plaintiff in error against the defendant in error, for goods and chattels, oxen, etc., sold and delivered to the defendant.

The defendant set up, by proper pleas, an agreement with the plaintiff to receive payment for the cattle at three dollars and fifty cents per hundred pounds, "in good current money of this State," and the controversy turns principally on the defendant's performance of this agreement by so paying.

There was also another agreement to arbitrate the matter set up in the pleadings, Judge Wilkinson being chosen as arbitrator.

On the trial, the two agreements were read, together with the agreement of extension of time to Wilkinson, to 20th November, 1855, to make his award, and the evidence then showed that on the first day of May, 1855, Moore drove ninety-six cattle to and had them weighed at Carnahan's scales, which cattle were admitted to be the cattle specified in the contract; that some one of defendant's men proposed to take charge of the cattle after they were weighed, to which plaintiff objected until he received pay, to which the defendant said yes, the cattle were not his until he paid for them, and asked plaintiff to go to the house and count the money, to which plaintiff answered that they could count it there. Morris said the wind blew too hard. Plaintiff said the money he wanted would not blow away. They went to the house, and Morris tendered the amount of money in bank notes of the State Bank of Indiana, of banks of the States of Ohio, Kentucky and Pennsylvania, which money plaintiff refused, saying that was not the money the contract called for. Morris said it was the kind of money the contract called for, and he should not give him any other. Moore said to Morris he would give him a reasonable time to get other money; that he did not wish to take advantage of him. Morris replied that he had offered him the kind of money the contract called for, and that he would make it the dearest lot of cattle the plaintiff ever had; defendant then mounted his horse, and rode away, forbidding the plaintiff from moving the cattle. Plaintiff drove the cattle away about two miles. Defendant returned the next morning and left with Mr. Carnahan

a sack of gold, and on the third of May took the gold away in company with plaintiff.

It was proved by defendant's witness, *L. Howe*, that at the time the first contract was made, June 27th, 1854, the defendant paid plaintiff four hundred and eighty-five dollars, being the first payment of five hundred dollars, less $15, which was to be paid in a few days, which payment was made in bank notes of the State Bank of Indiana, and that plaintiff said that was good enough—that he wanted money that he could pay his debts with, and if all the money was as good, he would be satisfied. This evidence was objected to by plaintiff, but the objection was overruled by the court.

Plaintiff proved by *Kinzie Cecil* that on the 12th of February, 1856, plaintiff went to defendant's house and showed defendant a letter from Wilkinson, and said he had come to get the time extended for the award ; that Judge Wilkinson would not otherwise make the award ; and Morris replied that he had concluded not to do anything more about it, and that if plaintiff came at him, he would give him the best fight he could.   Plaintiff then said if he (defendant) would go to Rock Island, he would take him up and bring him back ; but defendant said he would not go ; that if he were at Rock Island he would not do anything until he had seen his counsel, and whatever he said he would do.   Plaintiff and witness then returned to Rock Island. On the next day Morris came to Rock Island, when Moore told Morris that he had put the matter in the Circuit Court.   Morris replied that he could not have suited him better.   It was proved that on the first of May, 1855, cattle were worth in market $4.50 per one hundred pounds by agreement of the parties at the time the second agreement was drawn up.

*Lewis Howell*, a banker in Peoria, testifies that on 1st of May, 1855, there was no material difference between the value of the currency of Ohio, Kentucky, Indiana, and Illinois ; if anything, the currency of those States was worth more than that of Illinois, for the reason that it was worth more in New York.   Specie was worth from one and a quarter to one and a half per cent. more than currency.

We leave out of view all the testimony in relation to the reference to arbitration, as our opinion is not affected by it.

The plaintiff asked the court to give the following instructions, which were refused by the court :

1.   The provision in the contract read in evidence, providing for the payment in good current money of this State, cannot be satisfied by tender of bank bills of other States than of this State, and the plaintiff was not bound, under the provisions of

said contract, to receive in payment the bank bills of banks located in Indiana, Ohio, Kentucky or Pennsylvania.

2. Under the contract read in evidence, providing for the payment in good current money of this State, unless the jury believe that the defendant tendered the amount of money required by the contract in bank bills of solvent banks in this State, or in specie, on the day required by the contract, they will consider and determine that no tender was made under said contract, and that a tender of bank bills of other States than of this State is not a performance of said contract.

But the court instructed the jury as follows in defendant's instructions No. 2: That the contract aforesaid does not bind the defendant to pay for said cattle in gold or silver; and if the jury believe, from the evidence, that the plaintiff's offer to deliver the cattle was accompanied with a demand for gold and silver, or either, in payment for the same, and that the offer to deliver was made only upon condition that the defendant would pay for the same in gold or silver, this would be no offer to perform on his part, as required by the contract, and a refusal to pay such money by Morris would be no breach of the contract on his part, and that if, in this respect, Moore did not perform, or offer to perform, his part of the contract, he cannot recover.

3. If the jury believe, from the evidence, that when defendant tendered the plaintiff the paper money for the cattle, that Moore (plaintiff) said he wanted other money, or such money as the contract called for, he thereby meant and intended to be understood as demanding gold or silver money, and that the defendant did so understand him, that such demand, even if accompanied with an offer to deliver the cattle, was a breach of the contract on the part of plaintiff, and no breach of contract on part of defendant to refuse to pay such money for said cattle.

4. That the phrase, " good current money of this State," means that kind of good paper money of specie paying banks which, at the time it was to be paid, was passing current in and constituted a portion of the currency of this State.

To the refusing of which instructions, asked by plaintiff, and to the instructions as given, the plaintiff excepted.

The jury brought in a verdict for the defendant.

These instructions, asked on the part of the plaintiff, and refused, should have been given, and those on the other side refused.

There is nothing, in legal contemplation, " good current money" but the coin of the constitution, or foreign coins, made current by act of Congress, unless there is evidence giving to those terms a *local* signification.

The plaintiff, however, having accepted the first payment in current bank notes, and his declaration at the time, " that he wanted money that he could pay his debts with, and if all the money was as good, he would be satisfied," authorized the purchaser to come with such notes, with which to make the final payment, and, at least, entitled him to time, in case they were refused, to convert them into coin, and the case should have been put to the jury in this aspect.

The judgment is reversed and the cause remanded.

*Judgment reversed.*